### CYRIL C. PECK *vs.* EPHRAIM GOFF.

Agreement as follows : "I agree to pay over to C. C. Peck the income on the Wm. H. Vaughan Trust Fund after paying premium on life Ins. policy on life of said Wm. H. Vaughan and interest on five hundred dollars due me from said Vaughan, said trust fund being held as collateral for a loan of five hundred dollars, the payments of income to be applied to the payment of debt due from Wm. H. Vaughan to C. C. Peck.

EPHRAIM GOFF."

Endorsed, "This is to certify that we are satisfied with the within agreement.

WILLIAM H. VAUGHAN,
CYRIL C. PECK."

*Held,* that this was an agreement to pay the surplus income to Peck until Peck's claim against Vaughan was satisfied.

*Held,* further, that the agreement was not within the statute of frauds ; but that if it was, the *memorandum* was sufficient.

PLAINTIFF'S petition for a new trial.

*December* 8, 1892. DOUGLAS, J. The issue in this case is the construction of the following paper :

"PROVIDENCE, R. I., November 13, 1884.

I hereby agree to pay over to C. C. Peck the income on the

Wm. H. Vaughan Trust Fund after paying premium on life Ins. policy on life of said Wm. H. Vaughan and interest on five hundred dollars due me from said Vaughan, *said trust fund being held as collateral for a loan of five hundred dollars*, the payments of income to be applied to the payment of debt due from Wm. H. Vaughan to C. C. Peck.

Witness,                                        EPHRAIM GOFF.
         WM. P. VAUGHAN."

This paper was endorsed.

"This is to certify that we are satisfied with the within agreement.                            WILLIAM H. VAUGHAN.
                                               CYRIL C. PECK.

Witness:
         WILLIAM P. VAUGHAN."

The court below construed this agreement to mean that Goff should pay to Peck the surplus income of the fund only so long as Goff should hold the fund as collateral for his own claim. To this ruling the plaintiff excepted, contending that Goff bound himself to pay the surplus income of the fund to Peck until Peck's claim upon Vaughan should be satisfied. We think the latter is the true meaning of the agreement.

It is obvious that the only ground for the defendant's construction is found in the words we have italicized. Without these words the promise of Goff is absolute and unconditional; but it is urged that these words limit his promise to the duration of the loan for which he originally held the security. In this view the words, "said fund being held as collateral for a loan of five hundred dollars," must be held to mean, "so long as said fund shall be held as collateral security," &c.

This is not the natural meaning of the clause in the connection in which it is used. It seems to us that it is only an amplification of the description of the fund which is called the Wm. H. Vaughan Trust Fund, and is further identified as being the fund then held as security for the previous loan. The fund, or more properly the income of it, was already pledged to Goff to secure Vaughan's debt to him. He agrees to hold it thereafter as pledgee not only for his own claim, but also for the debt to Peck. Vaughan, the owner

of the pledge, consents to this additional lien upon it and Peck accepts this security and discontinues his action against Vaughan, in which Goff has been trusteed.

The title and dominion of Goff over the pledge was enlarged to meet the additional obligation he assumed.    Story on Bailments, § 304; Jones on Pledges, § 25 and cases cited; *Myers* v. *The United Guarantee, &c. Co.*, 7 De G. M. & G. 112.

If it be urged that the agreement is ambiguous upon its face, then the evidence of the conduct of the parties which was offered by the plaintiff and admitted *de bene* becomes pertinent.    *Davis* v. *Manchester*, 17 R. I. 577.    It appears that before the first payment became due to Peck under the agreement in question, Vaughan procured a new loan from one Reuben L. Allen, paid his debt to Goff and was allowed by Goff to make a new pledge of the fund to Allen; but, in the instrument creating the pledge to Allen, the surplus income, over the interest due Allen and the premiums on the insurance policy, was agreed to be paid to Goff and Goff collected this diminished surplus and paid it to Peck from time to time for four years and a half.    It does not appear that Peck was informed of the transfer to Allen; Vaughan says he did not notify him and Goff says he does not think he did. Peck therefore in ignorance of the change seems to have received these payments from Goff as a fulfillment of the agreement now under consideration.    These payments are, in our opinion, very strong evidence, that Goff and Vaughan understood the agreement as we have construed it.    Goff's statement that for this long period of time after he had ceased to have any interest in the fund he made these collections as a neighborly accommodation, is a very insufficient explanation of his conduct.

The agreement is attacked because it is said no consideration is expressed in it.    But it is not a promise or agreement to answer for the debt or default of another in the meaning of the Statute of Frauds.    The transaction on Goff's part was the assumption of the obligations of a pledgee.    Such obligations are imposed by law upon the holder of a pledge in

consideration of the dominion or authority which the owner gives him over it. The pledgee is under obligation to dispose of the pledge as the owner directs.

"It is obvious," says Mr. Browne, "that an engagement in terms to apply the debtor's own funds, received or to be received by the defendant to the payment of the demand against him created a duty as agent rather than as surety ; the defendant's promise is not to pay the debt but merely to deliver certain property to the nominee of the original debtor, and the right of action of such nominee against the defendant is not at all affected by the Statute of Frauds. And though the form of the defendant's engagement be different, as for instance, to pay if he should receive funds of the debtor to the amount of the debt ; still it does not apply as the debtor's own funds are in effect relied upon for payment." Browne on the Statute of Frauds, § 187.

In many cases of pledge where the pledge itself is a *chose in action* and incapable of actual manual delivery, or where the convenience of the parties requires what the Statute of Frauds does not, that the agreement should be written out, it is plain that only such writing is necessary as shall furnish memoranda of the undertaking and that such matter as the consideration may be proved *aliunde.* 1 Story on Contracts, 502, n. 1 ; *Arms* v. *Ashley,* 4 Pick. 71 ; *Patchin* v. *Swift,* 21 Vt. 292 ; *Thompson* v. *Blanchard,* 3 N. Y. 335 ; *Cummings* v. *Dennett,* 26 Me. 397.

In the case at bar, however, the written promise of the defendant and the endorsement signed by Vaughan constitute a direction by the owner of the fund and a promise by the holder of the pledge to comply with the direction. The power given to the pledgee by this assent of the owner was the consideration of the pledgee's promise, and so all the essential terms of the agreement sued upon are sufficiently expressed in writing to satisfy the statute if it were applicable.

The plaintiff's petition for a new trial is granted.

*Irving Champlin,* for plaintiff.

*Herbert B. Wood & William Fitch,* for defendant.